# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

WILLIAM ENRIQUE GUERRA MOLINA

    Residencial villa veranda poligino 10 casa 3,
    Santa Tecla La Libertad, El Salvador

    Petitioner,

vs.

KELLIN JOHANNA MARGARITA SANCHEZ ALVARADO,

    2214 Tecumseh St.
    Hyattsville, MD 20783-1640

    Respondent.

Civil No.:

## VERIFIED COMPLAINT/PETITION FOR RETURN OF MINOR CHILDREN TO THEIR HABITUAL RESIDENCE IN EL SALVADOR

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001** *et seq*.

    Petitioner, William Enrique Guerra Molina, respectfully petitions this Court as follows:

### INTRODUCTION

1.    William Enrique Guerra Molina ("Mr. Guerra" or "Petitioner"), a citizen of El Salvador, brings this action to secure the return of his two sons, L.A.G., age eight, and W.S.G.,[1] age four (together, the "Children"), who were, without Petitioner's consent or acquiescence, removed from their habitual residence in El Salvador and brought to and wrongfully retained in the United

---

[1] To protect their privacy, the Children are referred to by their initials or as "the Children," and their dates of birth have been omitted from this Petition. *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 6 n.1 (2014); *Abbott v. Abbott*, 560 U.S. 1, 5 (2010). The Children's names and dates of birth can be found in the attached **Exhibit A**, which Petitioner seeks permission to file under seal by a Motion to Seal, filed contemporaneously with this Petition.

States of America ("United States"), specifically Maryland, by their mother, Respondent, Kellin Johanna Margarita Sanchez Alvarado ("Respondent").

2. The wrongful retention of the Children occurred on or about January 14, 2020.

3. This Petition is filed pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or the "Convention"),[2] as implemented in the United States by the International Child Abduction Remedies Act ("ICARA").[3] A copy of the Convention, as implemented by ICARA, is attached hereto as **Exhibit B.**

4. The Convention came into effect in the United States of America on July 1, 1988 and in El Salvador on May 31, 1986, and was ratified between the United States and El Salvador on June 1, 2007.[4]

5. The objects of the Convention are as follows: (1) to secure the prompt return of a child wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.[5]

---

[2] Oct. 25, 1980, T.I.A.S. No. 11,670, at 1, 22514 U.N.T.S. at 98, reprinted in 51 Fed. Reg. 10493 (1986).

[3] 22 U.S.C. §§ 9001, *et seq*.

[4] U.S. Hague Convention Treaty Partners, 1980 Hague Convention on Civil Aspects of International Child Abduction, United States Department of State, https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html (last visited January 13, 2021).

[5] Hague Convention at Ch. 1, Article 1.

6. The Convention authorizes a federal district court to determine the merits of an abduction claim; it does not, however, allow the district court to consider the merits of any underlying custody dispute.[6]

7. The Hague Convention applies to cases where a child under the age of 16 years old has been wrongfully removed or retained away from his habitual residence,[7] and in breach of the custody rights of the petitioner. As set forth herein, at the time of the wrongful removal of the Children,[8] Petitioner had been exercising his rights of custody of the Children, who are both under the age of 16.

8. This Petition is filed less than one year from Respondent's wrongful retention of the Children.

---

[6] *Abbott*, 560 U.S. at 9, 20 ("A return remedy does not alter the pre-abduction allocation of custody rights but leaves custodial decisions to the courts of the country of habitual residence."); *see also Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001) ("the scope of a court's inquiry under the Hague Convention is limited to the merits of the abduction claim. [] As the district court correctly recognized in this action, 'The merits of any underlying custody case are *not* at issue.'") (emphasis in original; internal citations omitted); *Padilla v. Troxell*, 850 F.3d 168, 178 (4th Cir. 2017) ("the Hague Convention and ICARA do not empower us to address 'the merits of any underlying child custody claims.'") (citation omitted); *Alcala v. Hernandez*, 826 F.3d 161, 169 (4th Cir. 2016) ("[T]he convention generally leaves the ultimate custodial decisions to the courts of the country of habitual residence.") (citing *Abbott*, *supra*).

[7] *See, e.g., Miller v. Miller*, 240 F.3d 392, 400 (4th Cir. 2001) ("'A person can have only one habitual residence. On its face, habitual residence pertains to customary residence prior to the removal. The court must look back in time, not forward.' . . . This is a fact-specific inquiry that should be made on a case-by-case basis." (quoting *Friedrich v. Friedrich*, 983 F.2d 1396, 1401 (6th Cir. 1993) (emphasis added)); *Friedrich*, 983 F.2d at 1401 ("We agree that habitual residence must not be confused with domicile. To determine the habitual residence, the court must focus on the child, not the parents, and examine past experience, not future intentions.").

[8] "The removal or retention of a child is to be considered wrongful where –
    a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." Hague Convention, Ch. 1, Article 3.

3

## JURISDICTION AND VENUE

9. The Court has jurisdiction pursuant to 22 U.S.C. § 9003 because this case arises under the Convention and ICARA, as the dispute arises out of the removal and wrongful retention of children under the age of sixteen from their habitual residence in El Salvador to the United States.[9]

10. Venue is proper in this court pursuant to 22 U.S.C. § 9003(b), 28 U.S.C. § 1391(b), and 28 U.S.C. § 100(a) because, upon information and belief, Respondent and the children reside in Prince George's County, Maryland.

## STATUS OF PETITIONER AND THE CHILDREN

11. The Petitioner, William Guerra, is the father of both L.A.G. and W.S.G. Respondent, Kellin Sanchez, is the mother of L.A.G. and W.S.G. A copy of the birth certificates of L.A.G. and W.S.G. (with translation) is attached as **Exhibit A**. At the time of the filing of this Petition, L.A.G. is eight years old and W.S.G. is four years old.

12. The Convention applies to cases where a child under the age of sixteen (16) years has been removed or retained away from his or her habitual residence in breach of rights of custody of a petitioner, which the Petitioner in this case, Mr. Guerra, had been exercising at the time of the wrongful removal of L.A.G. and W.S.G. *See* **Exhibit C**.

13. At the time of the wrongful removal and retention of L.A.G. and W.S.G., Mr. Guerra was exercising custody rights within the meaning of Articles Three and Five of the Convention.[10]

---

[9] *See Miller*, 240 F.3d at 397 (citing 42 U.S.C. § 11603, reprinted at 22 U.S.C. § 9003(b)).

[10] Chapter One, Articles Three and Five of the Hague Convention describe wrongful removal and retention and parental/custody rights within the meaning of the Convention.

Chapter One, Article Three of the Convention States:
    The removal or the retention of a child is to be considered wrongful where –

4

He is the biological father of both of the Children and has exercised custody rights over the Children since they were born. Furthermore, L.A.G. and W.S.G. were habitual residents in El Salvador within the meaning of Article Three of the Convention until their removal away from El Salvador and wrongful retention in the United States in January 2020.

## FACTS

14. Petitioner and Respondent are the parents of two sons, L.A.G. and W.S.G., who are under the age of 16.

15. Both Petitioner and Respondent are citizens of El Salvador. Petitioner has a valid B1/B2 visa to the United States, but travel remains uncertain due to the COVID-19 travel restrictions.

16. Upon information and belief, Respondent has no immigration status in the United States and no legal standing to be present in the United States.

17. Petitioner and Respondent were never legally married; they were in a free union when the Children were born, having lived together as a family in Santa Tecla, La Libertad, El Salvador. Petitioner and Respondent began to live separately in December 2017.

---

a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.
The rights of custody mentioned in sub-paragraph a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Chapter One, Article Five of the Convention States:
For the purposes of this Convention –
a) "rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;
b) "rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

5

18. L.A.G.'s and W.S.G.'s entire lives are centered in El Salvador. It is where both Petitioner and Respondent were born and raised and have spent the majority of their lives. Until their wrongful removal and retention in January 2020, the Children had never left El Salvador.

19. Petitioner and Respondent had a signed custody agreement from November 2018 that gave Petitioner various custody rights, including but not limited to visitation with the Children every 15 days.[11] *See* **Exhibit C.**

20. On August 18, 2019, Respondent sought permission from Petitioner to travel to the United States of America with the children to visit family over the Christmas holiday in Maryland. Petitioner refused to sign the authorization form, but Respondent was able to receive permission from a court in El Salvador to travel to the United States with the Children from December 25, 2019 to January 14, 2020. *See* **Exhibit D.**

21. On or about December 25, 2019, Respondent left with the children to the United States. However, Respondent did not return to El Salvador on January 14, 2020 as required by the Court authorization.

22. On February 18, 2020, Petitioner completed and submitted a Hague Convention Return Application to the Central Authority of El Salvador (the "Request for Return"), a copy of which is attached hereto as **Exhibit E.** The Request for Return, which is the basis of this Petition, has been filed through the Central Authority of El Salvador and the United States Department of State, Office of Children's Issues ("United States Central Authority").

23. On May 28, 2020, the United States Central Authority sent an email letter to Respondent informing Respondent that Petitioner had filed a Hague Convention Return Application in El Salvador and inviting Respondent to work with Petitioner to facilitate an amicable resolution

---

[11] "The Convention recognizes that custody rights can be decreed jointly or alone." *Abbott*, 560 U.S. at 11.

concerning the Children. Respondent did not respond to the letter from the United States Central Authority. *See* **Exhibit F.**

24. Since Respondent wrongfully removed L.A.G. and W.S.G. from El Salvador and wrongfully retained L.A.G. and W.S.G. in the United States on January 14, 2020, Petitioner has not had in-person contact with the Children. Instead, Petitioner has only been permitted limited phone calls with the Children. These phone calls have been controlled by Respondent and the man Respondent is living with. Further, L.A.G. has repeatedly told Petitioner during various phone conversations that L.A.G. misses Petitioner.

25. Without access to their relatives or their father, and without any established connections to the community in which they live, L.A.G. and W.S.G.'s current living situation presents a danger to their well-being.

26. As Respondent has retained the Children in the United States without the consent of Petitioner, Petitioner has rights under Salvadorian law pursuant to Article 43 and Article 44 of the Law on Comprehensive Protection of Children and Adolescents. *See* **Exhibit G.** Indeed, Article 43 explicitly describes the necessary measures that will be taken by the State to reintegrate children who have been wrongfully retained under the Hague Convention. *See id*.

## WRONGFUL RETENTION OF THE CHILDREN BY RESPONDENT

27. Petitioner restates the allegations contained in paragraphs 1-26 as if fully set forth herein.

28. As set forth above, on January 14, 2020, Respondent wrongfully retained L.A.G. and W.S.G. away from their habitual residence within the meaning of Article 3 of the Hague Convention. Respondent continues to wrongfully retain L.A.G. and W.S.G. in the state of Maryland, United States, in violation of Article 3 of the Hague Convention despite Petitioner's efforts to locate the Children and have them returned to their habitual residence in El Salvador.

29. The removal and retention of L.A.G. and W.S.G. is therefore a violation Salvadorian law[12] and is a wrongful retention within the meaning of Articles Three and Five of the Hague Convention.

30. Respondent and the Children have been in the United States since December 25, 2019 and, upon information and belief, no longer have valid visas or legal immigration status to remain in the United States. Petitioner has no knowledge or and is aware of no evidence to support that Respondent has filed for any type of asylum or lawful immigration status.

31. Petitioner never consented to the removal of L.A.G. and W.S.G. from El Salvador. In fact, Petitioner filed a petition with the El Salvador Central Authority seeking the return of the Children to El Salvador as soon as he could, in February 2020. *See* **Exhibit E.**

32. Respondent's removal and retention of L.A.G. and W.S.G. is further wrongful within the meaning of Articles Three and Five of the Hague Convention, because it is in violation of Petitioner's rights of custody and parental authority as established by Salvadorian law, as set forth above.

33. At all relevant times, Petitioner was exercising his parental and custody rights, including at the time of L.A.G.'s and W.S.G.'s removal and wrongful retention away from their habitual residence.

34. At no time has any Salvadorian court ordered the suspension of Petitioner's parental authority over L.A.G. or W.S.G.

---

[12] Because L.A.G.'s and W.S.G's habitual residences were in El Salvador at the time of their wrongful removal and retention, this Court shall consider the law of El Salvador "to determine the content of [Petitioner's] right, while following the Hague Convention's text and structure to decide whether" Petitioner's right is a "'right of custody.'" *Abbott*, 560 U.S. at 10; *see also* Fed. R. Civ. P. 44.1.

35. L.A.G. and W.S.G. have strong ties to their habitual residence in El Salvador, where they lived their entire lives until the time they were removed and wrongfully retained away from the country by Respondent. Conversely, L.A.G. and W.S.G. lack any similar ties to their current location in Hyattsville, Maryland and have not established the United States as their new habitual residence. Moreover, L.A.G. and W.S.G.'s current residence is unstable due to their status as undocumented immigrants in the United States.

36. Respondent has refused to acquiesce to Petitioner's lawful requests for the return of L.A.G. and W.S.G. to their habitual residence of El Salvador. Further, Respondent actively inhibits Petitioner from exercising his parental rights by limiting L.A.G.'s and W.S.G.'s contacts with Petitioner.

37. On information and belief, neither Respondent nor the Children possess legal authorization to remain permanently in the United States. As a result, L.A.G. and W.S.G. face immediate danger in the form of harm resulting from living in an unstable home environment.

38. In light of the aforementioned Salvadorian law, the Hague Convention, and ICARA, L.A.G. and W.S.G. are currently being illegally held in custody, confinement, and/or restraint by Respondent. Unless this Court takes immediate action to bring Respondent before the Court, irreparable harm will occur to the well-being of the children in that they are denied all proper access to their father, other relatives in El Salvador, home, friends, and culture.

39. Unless an order to show cause is issued, Petitioner will suffer irreparable harm and emotional harm by being kept apart from the Children who have been wrongfully removed from El Salvador, their habitual place of residence, and wrongfully detained in the United States.

### ATTORNEYS' FEES AND COSTS INCLUDING TRANSPORTATION EXPENSES PURSUANT TO CONVENTION ARTICLE 26 AND 22 U.S.C. § 9007

40. Petitioner restates the allegations contained in paragraphs 1-39 as if fully set forth herein.

41. Petitioner has incurred expenses as a result of the wrongful retention of L.A.G. and W.S.G. by Respondent. Petitioner will submit a copy of all expenditures as soon as practicable and possible and will amend these costs, from time to time, according to proof and in light of further expenditure required because of this wrongful retention.

42. Petitioner respectfully requests that this Court award all legal costs and fees, as well as all other applicable fees, incurred to date as required by 22 U.S.C. § 9007, reserving jurisdiction over further expenses.

### PROVISIONAL AND EMERGENCY REMEDIES

43. Petitioner restates the allegations contained in paragraphs 1-42 as if fully set forth herein.

44. Unless an Order to Show Cause is issued, Mr. Guerra will continue to be prevented from having proper contact with his sons and will, himself, continue to suffer irreparable harm and emotional harm by being kept apart from the Children who have been removed and retained away from El Salvador, their habitual place of residence, and wrongfully detained in the United States.

45. Petitioner requests that this Court issue, along with the requested Show Cause Order, an order prohibiting the removal of the Children from the jurisdiction of the Court during the proceedings, an Order taking the passports and all other travel documents of the Children into safe-keeping, and an Order setting an expedited hearing on the Verified Petition for Return of the Children to El Salvador.

## NOTICE OF HEARING

46. Pursuant to 22 U.S.C. § 9003(c), Respondent will be given notice of any hearing in accordance with Md. Code Ann., Family Law Article § 9.5-205.[13]

## DECLARATION PURSUANT TO UNIFORM CHILD CUSTODY JURISDICTION AND ENFORCEMENT ACT

47. Under ICARA, notice of a Hague Convention Petition "shall be given in accordance with the applicable law governing notice in interstate child custody proceedings."[14] As L.A.G. and W.S.G. currently reside in Maryland, Maryland provides the applicable law governing notice in interstate child custody proceedings. Specifically, Maryland has adopted the UCCJEA.[15]

48. The details regarding L.A.G. and W.S.G. that are required to be provided under the UCCJEA are as follows:

   a. On information and belief, the present forced location of the children is:

      2214 Tecumseh St. Hyattsville, MD 20783-1640.

   b. Petitioner does not have information of any proceeding that could affect this proceeding, including any custody proceeding concerning the Children, currently pending in any other court of this state or any other state.

   c. Petitioner knows of a person named Oscar Vaquerano who is not a party to this proceeding and who, upon information and belief, has at times had physical custody of the Children since their wrongful retention away from their habitual residence in El Salvador. Petitioner is informed and on that basis believes that Oscar Vaquerano

---

[13] The Convention does not specify any specific notice requirements. ICARA provides that notice be given in accordance with the applicable law governing notice in interstate child custody proceedings. 22 U.S.C. § 9003(c). In the United States, the Parental Kidnapping Prevention Act ("PKPA") and the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") govern notice in interstate child custody proceedings. *Klam v. Klam*, 797 F. Supp. 202, 205 (E.D.N.Y. 1992). The UCCJEA and Part (e) of the PKPA provide that reasonable notice and opportunity to be heard must be given to all parties before a custody determination is made. *See* Md. Code Ann., Family Law Article § 9.5-205(a). The UCCJEA further provides that notice shall be given in a manner reasonably calculated to give actual notice. *See id.* (incorporating by reference Md. Code Ann., Family Law Article § 9.5-107). Furthermore, in cases where flight of a respondent is at issue, federal courts have allowed substituted service in any manner reasonably effective to give the respondent notice of the suit. *Ingram v. Ingram*, 463 So. 2d 932, 936 & n.1 (La. App. 1985).

[14] 22 U.S.C. § 9003(c).

[15] Codified at Md. Code, Fam. Law §§ 9.5-101, *et seq*.

11

has, at times, resided at the same location as Respondent and the Children since their wrongful retention away from their habitual residence in El Salvador. However, Petitioner does not otherwise know Oscar Vaquerano's address. Moreover, Petitioner is not aware of any other person not a party to this proceeding who has physical custody of the Children or who claims rights of legal custody or physical custody of, or visitation with, the Children.

## **RELIEF REQUESTED**

49. WHEREFORE, Petitioner, William Enrique Guerra Molina, respectfully requests the following relief:

A. An Order directing a prompt return of L.A.G. and W.S.G. with their personal belongings, to their habitual residence in El Salvador;

B. A Show Cause Order scheduling an initial show cause hearing on the first available date on the Court's calendar, and requiring Respondent to appear in person with the Children at the show cause hearing and to confirm that the Children are physically located within this Court's jurisdiction, as set forth in Petitioner's separately filed Request for Expedited Consideration of Petition for Return of Children to El Salvador and Issuance of Show Cause Order;

C. The issuance of an Order prohibiting the removal of L.A.G. and W.S.G. from the jurisdiction of this Court, as set forth in Petitioner's separately filed Request for Expedited Consideration of Petition for Return of Children to El Salvador and Issuance of Show Cause Order, and setting an expedited hearing on the merits of this Verified Petition for Return of Children to Petitioner;

D. The issuance of an Order directing that L.A.G.'s and W.S.G.'s passports and/or any other travel documents, together with Respondent's, be brought into this Court by any United States Marshall, federal office or police officer, as Petitioner requests in

   his separately filed Request for Expedited Consideration of Petition for Return of Children to El Salvador and Issuance of Show Cause Order;

E. The issuance of an Order commanding Respondent to appear in this Court with the children to show cause why L.A.G. and W.S.G. have been kept from their habitual place of residence in El Salvador, why L.A.G. and W.S.G. should not be returned to their habitual place of residence in El Salvador, and why such other relief requested in the Verified Petition for Return of Children should not be granted;

F. That this Court excuse the appearance of Petitioner at the initial Show Cause Hearing as long as Petitioner's counsel appears on his behalf and has full authority from Petitioner to schedule an expedited evidentiary hearing and all related deadlines;

G. An Order directing Respondent to pay Petitioner's legal costs and fees, as well as all other expenses resulting from the wrongful retention of L.A.G. and W.S.G.; and

H. Any such further relief as justice and its cause may require or the Court deems appropriate.

Dated: January 13, 2021

DUANE MORRIS LLP

*/s/ Allison M. Midei*

Allison M. Midei (Federal Bar No. 19860)
DUANE MORRIS LLP
100 International Drive, Suite 700
Baltimore, MD 21202-5184
Telephone: (410) 949-2944
Fax: (410) 949-2950
AMMidei@duanemorris.com

Jamie E. Brown (*pro hac vice* forthcoming)
DUANE MORRIS LLP
190 South LaSalle Street, Suite 3700
Chicago, IL 60603-3433
Telephone: (312) 499-0145
Fax: (312) 577-0721

JEBrown@duanemorris.com

*Attorneys for Petitioner*

14

## VERIFICATION

I, William Enrique Guerra Molina, declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

January 12th, 2021
_____
Date

_____
William Enrique Guerra Molina

## VERIFICACIÓN

Yo, William Enrique Guerra Molina, declaro bajo pena de perjurio bajo las leyes de los Estados Unidos de America que lo anterior es verdadero y correcto a mi leal saber y entender.

12 de Enero de 2021
_____
Fecha

_____
William Enrique Guerra Molina